IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| SHAKIYA FIELDS, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 7:24-cv-01182-RDP |
| ) | |
| LOUIS DEJOY, in his official ) | |
| capacity as Postmaster General of the ) | |
| United States, ) | |
| ) | |
|     Defendant. ) | |

### MEMORANDUM OPINION

This case is before the court on the Motion to Dismiss filed by Defendant Louis DeJoy ("Defendant"), in his official capacity as Postmaster General of the United States. (Doc. # 9). The Motion has been fully briefed. (Docs. # 9, 12, 17, 23, 24). After careful consideration, the court concludes that Defendant's Motion to Dismiss is due to be denied.

**I.    Background**

This case involves Plaintiff Shakiya Fields's ("Plaintiff") allegations that she was sexually harassed by her supervisor and then retaliated against while working for the United States Postal Service ("USPS").

Plaintiff is a female who began working for Defendant as a City Carrier Assistant at the Tuscaloosa, Alabama Post Office in May 2023. (Doc. # 1 ¶¶ 12, 15). On or around May 28, 2023, Plaintiff's supervisor Jasmine Tolliver ("Tolliver") showed Plaintiff a picture of Post Office District Manager Arthur Bowens ("Bowens") in the shower with his tongue out. (*Id.* ¶ 17). Plaintiff believed this picture to be sexual in nature. (*Id.*).

On or around May 30, 2023, Tolliver told Plaintiff that Bowens "wanted to 'f**k' Plaintiff." (*Id.* ¶ 18). Tolliver also told Plaintiff that "she 'wanted some too' and Bowens was not going to 'f**k' her alone." (*Id.* ¶ 19). Additionally, Tolliver told Plaintiff that she would not have to work undesirable Sunday shifts if she had sex with her and Bowens. (*Id.* ¶ 20).

Plaintiff rebuffed the advances, but she alleges that despite this, Tolliver continuously sent her explicit texts, photos, and videos. (*Id.* ¶ 21). For instance, Tolliver sent Plaintiff an explicit photo of Tolliver smoking marijuana with her breasts exposed and an explicit video of Tolliver and Bowens having sex. (*Id.* ¶¶ 22-23).

Plaintiff demanded that Tolliver halt her sexual advances and threatened to report Tolliver's and Bowens's conduct if Tolliver did not stop. (*Id.* ¶ 24). According to Plaintiff, Tolliver told her that if she reported her, it would be Plaintiff's word against hers. (*Id.* ¶ 25). Tolliver also allegedly told Plaintiff, "I [] am the manager, and you [] are not." (*Id.* ¶ 26). Plaintiff perceived this statement as a threat that any reports of Tolliver's and Bowens's conduct would be dismissed, and Plaintiff would be terminated for reporting their conduct. (*Id.*). Despite Plaintiff's consistent refusal of Tolliver's and Bowens's advances, they continued to harass her, and on or about August 28, 2023, Plaintiff was "constructively terminated from her employment based on the sexually hostile environment created by the Defendant." (*Id.* ¶ 27).

On September 5, 2023, Plaintiff filed an informal Equal Employment Opportunity ("EEO") complaint. (Doc. # 9-2). On December 14, 2023, Plaintiff filed a formal EEO complaint alleging sexual harassment and retaliation. (Doc. # 9-3). The Final Agency Decision was issued on May 24, 2024 and was mailed to both Plaintiff and her attorney. (Doc. # 9-4). The Final Agency Decision informed Plaintiff of her right to file a civil action within ninety days of receipt. (Doc. # 9-4 at 16). Plaintiff filed her Complaint (Doc. # 1) in federal court on August 29, 2024.

**II.     Standard of Review**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the "complaint must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)).

3

That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

**III.     Analysis**

In her Complaint, Plaintiff asserts the following Title VII claims against Defendant: hostile work environment – sexual harassment (Count I) and retaliation (Count II). (Doc. # 1). Defendant argues that Plaintiff's Complaint should be dismissed in its entirety because Plaintiff's claims are time-barred and Plaintiff's Complaint fails to state a claim upon which relief can be granted. (Doc. # 9). Below, the court considers each of Defendant's asserted grounds.

**A.     Timeliness**

Title VII establishes time limits for the filing of an employment discrimination lawsuit in federal court by an aggrieved federal employee. *See* 42 U.S.C. § 2000e-16(c). The relevant statute provides that the employee may file a Title VII action "[w]ithin 90 days of receipt of notice of final action taken by a department, agency, or . . . by the Equal Employment Opportunity Commission." *Id.*; *see also Hogan v. Sec'y, U.S. Dep't of Veterans Affs.*, 121 F.4th 172, 174 (11th Cir. 2024). Here, the Final Agency Decision was issued on May 24, 2024 and was mailed to both Plaintiff and her attorney. (Doc. # 9-4). Plaintiff filed her Complaint on August 29, 2024. (Doc. # 1). Defendant contends that Plaintiff received notice of the Final Agency Decision on May 30, 2024, which is ninety-one days before she filed her Complaint. (Doc. # 9 at 11-12). To support this argument, Defendant cites the USPS tracking data associated with the notice, which indicates

that the notice was delivered to Plaintiff's address and her attorney's address on May 30, 2024. (*Id*. at 11 (citing Doc. # 9-5 at 2)).[1]

Plaintiff's Complaint does not allege a specific date on which she or her attorney received the final agency decision, but states that the "[d]ecision was filed on May 24, 2024, and this Complaint has been filed within ninety (90) days of receipt of said Notification of Right to File a Civil Action and is attached as Exhibit A along with signature of receipt." (Doc. # 1 ¶ 10). Plaintiff attached a copy of the notice of Final Agency Decision and the envelope in which that copy was mailed to her Complaint. (*See* Doc. # 1-1). The notice does not state the date it was delivered to Plaintiff or her attorney, but it lists the tracking numbers for the copy mailed to Plaintiff and the copy mailed to her attorney. (*See id.* at 1). The copy of the envelope in which the notice was mailed has a handwritten note in the corner reading "Rec. 6/3/24," with what appears to be someone's initials written next to the note, suggesting the recipient of that copy received the notice on June 3, 2024. (*See id*. at 2).

In response to Defendant's Motion to Dismiss, Plaintiff argues that "[i]n this action, [she] clearly alleged that she received actual knowledge of the Agency's Final Decision on June 3, 2024, when [her] counsel received a parcel from the Defendant." (Doc. # 12 at 4 (citing Docs. # 1 ¶ 10; 1-1 at 2)).

When a defendant contests whether the complaint was timely filed, the plaintiff bears the burden of showing that she has met the timeliness requirement. *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005); *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233-34 (11th Cir.

---

[1] The court can consider these documents without converting this motion into a motion for summary judgment because the Final Agency Decision is central to Plaintiff's claim and undisputed and the USPS tracking documents are public records. *See Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010) (internal citations omitted); *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (internal citations omitted).

2002). The Eleventh Circuit has explained that the determination of when notice was received, and thus the start of the ninety-day limitations period, is to be analyzed "on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimum responsibility . . . without conditioning a claimant's right to sue . . . on fortuitous circumstances or events beyond [her] control." *Kerr*, 427 F.3d at 952 (citing *Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1340 (11th Cir. 1999)) (alterations in original). Generally, "statutory notification is complete only upon actual receipt of the right to sue letter." *Id.*

Here, Plaintiff alleges that she received notice of the Final Agency Decision on June 3, 2024 when her attorney "received a parcel from the Defendant." (Doc. # 12 at 4). Although Defendant disputes this and argues that Plaintiff actually received notice on May 30, 2024 (which would make the filing of her Complaint untimely), this dispute is at the pleadings stage – not on summary judgment. Therefore, viewing the allegations in the Complaint in the light most favorable to Plaintiff, *Watts*, 495 F.3d at 1295, it would be premature to dismiss Plaintiff's Title VII claims as untimely. *See Blair v. Brennan*, 2017 WL 2538564, at *2 (M.D. Fla. June 12, 2017) ("Because courts must make findings of fact regarding when a plaintiff and/or h[er] attorney received the [Final Agency Decision] in order to determine whether an action was timely filed, courts tend to decide this issue at summary judgment or after holding an evidentiary hearing."); *id.* (citing *Kerr*, 427 F.3d at 948 (summary judgment); *Zillyette*, 179 F.3d at 1339 (summary judgment); *Law v. Hercules, Inc.*, 713 F.2d 691, 692 (11th Cir. 1983) (summary judgment); *Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1243 (11th Cir. 1982) (reversing dismissal and remanding for an evidentiary hearing)).

6

Accepting Plaintiff's well-pleaded allegations as true, she received notice of the Final Agency Decision and her right to sue on June 3, 2024. Accordingly, her Complaint was timely filed on August 29, 2024, and the motion to dismiss based on timeliness grounds is due to be denied.

### B.      Failure to State a Claim

#### 1.      Hostile Work Environment – Sexual Harassment (Count I)

"Sexual harassment that takes the form of a hostile work environment is actionable under Title VII." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)). To survive a motion to dismiss, "[a] complaint in an employment discrimination case need not contain specific facts establishing a *prima facie* case under the evidentiary framework." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)). Rather, a plaintiff adequately pleads a claim for hostile work environment if she alleges the following:

> (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of the employment; and (5) there is a basis for holding the employer liable for the harassment.

*Furcron*, 843 F.3d at 1304 (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)). Defendant contends that Plaintiff has failed to plead sufficient facts to establish the fourth and fifth elements of her hostile work environment claim.

As to the fourth element, Defendant argues that "the harassment alleged is not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment." (Doc. # 9 at 21). "Either severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (emphasis in original). In evaluating

7

whether harassment is severe or pervasive, courts look to the totality of the circumstances, including factors such as (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's job performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Plaintiff bases her hostile work environment claim on several instances of alleged sexual harassment by Tolliver. Specifically, she points to the following: when Tolliver showed Plaintiff a picture of Bowens in the shower with his tongue out (Doc. # 1 ¶ 17); when Tolliver told Plaintiff that Bowens wanted to have sex with her and Tolliver wanted to join (*id.* ¶¶ 18-19); when Tolliver told Plaintiff she would not have to work certain undesirable shifts if she had sex with her and Bowens (*id.* ¶ 20); when Tolliver texted Plaintiff an unsolicited, explicit photo of her breasts (*id.* ¶ 22); and when Tolliver sent Plaintiff an unsolicited, explicit video of her and Bowens having sex. (*Id.* ¶ 23).

Defendant argues that "[t]he Eleventh Circuit has repeatedly rejected hostile work environment claims based on more serious conduct than is present here." (Doc. # 9 at 21). To support this argument, Defendant cites to several Eleventh Circuit cases rejecting hostile work environment claims. (*Id.* at 21-22 (citing *Henderson v. Waffle House, Inc.*, 238 F. App'x 499, 502 (11th Cir. 2007); *Mitchell v. Pope*, 189 F. App'x 911, 914 n.3 (11th Cir. 2006); *Mendoza v. Borden*, 195 F.3d 1238 (11th Cir. 1999); *Smart v. City of Miami Beach*, 933 F. Supp. 2d 1366 (S.D. Fla. 2013), *aff'd* 567 F. App'x 820 (11th Cir. 2014))). However, each of those cases was decided on appeal from a district court's ruling on a motion for summary judgment or judgment as a matter of law, not on a motion to dismiss. Accordingly, unlike the courts in those cases, this court is

tasked with merely determining whether Plaintiff's hostile work environment claim as pleaded is "plausible on its face." *Twombly*, 550 U.S. 544, 570 (2007)).

If true, the facts alleged by Plaintiff show that Tolliver's conduct was frequent and more than "a mere offensive utterance." *Harris*, 510 U.S. at 23. The court also finds it plausible that being subjected to frequent sexual advances and receiving multiple unsolicited, explicit photos and videos from a supervisor – as Plaintiff alleges she was – would be "humiliating" and could have "unreasonably interfere[d] with [Plaintiff's] work performance." *Id*. Thus, Plaintiff has pled sufficient facts to establish the fourth element of her hostile work environment – that the harassment she faced was severe and pervasive.

Defendant also argues Plaintiff has failed to state a claim for hostile work environment because she has not alleged facts sufficient to establish the fifth element of her claim, that "there is a basis for holding [her] employer liable for the harassment." *Furcron*, 843 F.3d at 1304 (citing *Miller*, 277 F.3d at 1275). Defendant contends that it "cannot be held liable for sexual harassment because it is shielded by the *Ellerth-Faragher* defense." (Doc. # 9 at 22).

As the Supreme Court has articulated, "the *Ellerth/Faragher* framework sets out two circumstances in which an employer may be vicariously liable for a supervisor's harassment." *Vance v. Ball State Univ.*, 570 U.S. 421, 440 (2013) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). "The first situation (which results in strict liability) exists when a supervisor actually takes a tangible employment action . . . . The second situation (which results in vicarious liability if the employer cannot make out the requisite affirmative defense) is present when no such tangible action is taken." *Id.* The *Ellerth/Faragher* affirmative defense requires proof "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff

9

employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807.

Defendant contends that because Plaintiff has not alleged that Tolliver, Plaintiff's supervisor, took any tangible employment action against her, it is entitled to the *Ellerth/Faragher* affirmative defense. (Doc. # 9 at 23). In response, Plaintiff argues that "[a]s a result of [Tolliver's] harassment, [she] was subject to an adverse employment action by constructively terminating her." (Doc. # 12 at 10). While Plaintiff is correct that constructive discharge is an adverse employment action, *see Atkins v. Fulton Cnty., Ga.*, 420 F.3d 1293, 1300-01 (11th Cir. 2005), it is not a tangible employment action. That is, constructive discharge is not "an official act of the enterprise" such as "a demotion or reduction in compensation." *Pa. State Police v. Suders*, 542 U.S. 129, 148 (2004). Accordingly, when a plaintiff alleges that she was constructively discharged, and thus no tangible action was taken, a defendant has the opportunity to establish through the *Ellerth/Faragher* affirmative defense that it should not be held vicariously liable. *Id.* at 149.

But, again, we are at the pleadings stage in this litigation. The Eleventh Circuit has held that "[a] complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the fac of the complaint." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) (citing *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (in turn citing *Jones v. Bock*, 549 U.S. 199, 215 (2007))).

For all of these reasons, the portion of Defendant's motion to dismiss that is based on Plaintiff's hostile work environment claim is due to be denied.

### 2.      Retaliation (Count II)

The Eleventh Circuit has long held that the prohibition of "any discrimination" under 42 U.S.C. § 2000e-16(a), Title VII's federal-sector provision, "directly 'bars reprisals against federal employees who file charges of discrimination.'" *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1203 (11th Cir. 2021) (quoting *Porter v. Adams*, 639 F.2d 273, 277-78 (5th Cir. 1981)).[2] "That is, [the Eleventh Circuit has] held that 'discrimination,' as used in Title VII's federal-sector provision, by its own terms includes retaliation." *Babb*, 992 F.3d at 1203 (citing *Canino v. U.S. E.E.O.C.*, 707 F.2d 468, 472 (11th Cir. 1983)). Accordingly, to establish a prima facie case of retaliation, Plaintiff must show that: (1) she participated in activity that Title VII protects; (2) she suffered an adverse personnel action; and (3) a causal relationship exists between her protected activity and the adverse personnel action. *Buckley v. Sec'y of Army*, 97 F.4th 784, 798 (11th Cir. 2024) (citing *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)).

Regarding the first prima facie element, a plaintiff may show that she engaged in statutorily protected expression under Title VII where she "has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). These provisions, which are known as the "opposition clause" and the "participation clause" respectively, describe two different types of statutorily protected expression. *See Crawford v. Metro. Gov. of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009). Taking those in reverse order, to qualify as conduct protected under the participation clause, the conduct must relate to "proceedings and activities which occur in conjunction with or after the

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

filing of a formal charge with the EEOC." *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (citing *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978)). Because Plaintiff did not file her EEO complaints until after she had resigned (Docs. # 9-2; 9-3), the court concludes that Plaintiff has not sufficiently alleged that she engaged in any protected participation conduct before she resigned.

To establish protected conduct under the opposition clause, Plaintiff must first "'show[] that [s]he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).

While Plaintiff alleges in her Complaint that Tolliver made inappropriate comments to her and sent her unsolicited, explicit photos and videos (*see generally* Doc. # 1 ¶¶ 17-23), Plaintiff makes these allegations under her hostile work environment claim in Count I and does not incorporate these allegations under her retaliation claim in Count II. (*See id.* ¶ 30 (only "repeat[ing] and re-alleg[ing] the allegations contained in paragraphs 1-13")). Accordingly, Plaintiff does not make any allegation under her retaliation claim to support a finding that "'[s]he had a good faith, reasonable belief that [Defendant] was engaged in unlawful employment practices.'" *Howard*, 605 F.3d at 1244 (quoting *Little*, 103 F.3d at 960). As part of her retaliation claim, she merely makes conclusory allegations that cannot support a prima facie case for retaliation. That is, she alleges that she "was subjected to a hostile work environment based on sex by defendant" (*id.* ¶ 31); "[a]s a result of the sexually charged hostile work environment, [she] was subjected to severe mental and physical abuse because of her gender, resulting in the regular attendance of therapy sessions" (*id.* ¶ 32); instead of taking action "to investigate the sexual advances and hostile environment complained of by the Plaintiff, Defendant constructively terminated Plaintiff's employment after

12

her complaints" (*id.* ¶ 33); and "Defendant intentionally discriminated against Plaintiff by retaliating against her for reporting and opposing sexual harassment." (*Id.* ¶ 34).

Furthermore, even if Plaintiff had sufficiently alleged under her retaliation claim that Defendant was engaged in unlawful employment practices, she has not alleged that she engaged in any protected opposition conduct. While Plaintiff alleges in her Complaint that she "demanded Tolliver to halt her sexual advances or Plaintiff would report Tolliver and Bowen[s]'s conduct" (*id.* ¶ 24), she again makes this allegation under her hostile work environment claim in Count I and does not incorporate the allegation under her retaliation claim in Count II. (*See id.* ¶ 30 (only "repeat[ing] and re-alleg[ing] the allegations contained in paragraphs 1-13")). For all of these reasons, Plaintiff's allegations are insufficient to support a claim for retaliation. However, the court will give Plaintiff the opportunity to file an amended complaint and properly plead this claim.

### 3. Constructive Discharge

Plaintiff's Complaint only contains two counts: Count I, which raises a hostile work environment claim and Count II, which raises a claim for retaliation. (Doc. # 1). However, Defendant notes that in her Complaint, Plaintiff alleges that she "was constructively terminated from her employment based on the sexually hostile environment created by the Defendant." (*Id.* ¶ 27; *see also id.* ¶ 33). Defendant contends that "[t]o the extent that Plaintiff attempts to bring a constructive discharge claim, she fails to sufficiently allege such a claim." (Doc. # 9 at 23-24). Plaintiff's constructive discharge allegation is only contained within her hostile work environment claim. Because the Supreme Court has characterized a constructive discharge claim as a separate claim, *Green v. Brennan*, 578 U.S. 547, 557-60 (2016), Plaintiff must have asserted this claim explicitly in her Complaint. Accordingly, because Plaintiff did not plead a separate constructive

discharge claim, the court need not address the parties' arguments regarding such a claim. To the extent she desires to pursue such a claim, she should separately plead it in an amended complaint.

### IV.     Conclusion

For the reasons stated above, Defendant's Motion to Dismiss (Doc. # 9) is due to be denied. If Plaintiff wishes to file an amended complaint remedying any pleading deficiencies, she is granted leave to amend her Complaint. Plaintiff shall file an amended complaint on or before June 16, 2025. An order reflecting this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this May 19, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE